2019 PA Super 188

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :--- |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KENNETH MILLER | : | |
| | : | |
| Appellant | : | No. 338 EDA 2017 |

Appeal from the PCRA Order January 12, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0902382-1998

BEFORE:   LAZARUS, J., OLSON, J., and STRASSBURGER*, J.

DISSENTING OPINION BY OLSON, J.:                    **FILED JUNE 11, 2019**

In this case, Appellant, Kenneth Miller, appeals from the January 12, 2017 order granting in part and denying in part his first petition filed pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  I believe that a timely appeal taken from a PCRA order granting penalty phase relief in a capital case, but denying guilt phase relief, constitutes an appeal from "a final order under [the PCRA] in a case in which the death penalty has been imposed" for purposes of 42 Pa.C.S.A. § 9546(d).  Hence, in my view, such an appeal falls within the exclusive appellate jurisdiction of the Supreme Court of Pennsylvania.  **See** 42 Pa.C.S.A. § 722(4).  Because this Court lacks jurisdiction in such cases, I believe that we may not consider the merits of the appeal and, instead, must transfer this appeal to our Supreme Court.  Accordingly, I respectfully dissent.

_____

*   Retired Senior Judge assigned to the Superior Court.

As noted by the learned Majority, in September 1999, Appellant was convicted of two counts of first-degree murder,[1] robbery,[2] and criminal conspiracy.[3] The trial court sentenced Appellant to death after the jury found the existence of two aggravating circumstances and found that those aggravating circumstances outweighed the lone mitigating circumstance. Our Supreme Court affirmed. **Commonwealth v. Miller**, 819 A.2d 504 (Pa. 2002), *cert. denied sub nom.*, **Miller v. Pennsylvania**, 540 U.S. 827 (2003).

On January 21, 2004, Appellant filed a timely PCRA petition raising both penalty phase and guilt phase claims. On October 24, 2008, Appellant amended his petition. On May 13, 2014, the PCRA court granted Appellant penalty phase relief by vacating his death sentence and imposing a sentence of life imprisonment without the possibility of parole.[4] That same day, an extensive evidentiary hearing began on a portion of Appellant's guilt phase claims.[5] On January 12, 2017, the PCRA court denied relief on Appellant's remaining guilt phase claims. Appellant filed a notice of appeal to this Court.

---

[1] 18 Pa.C.S.A. § 2502(a).

[2] 18 Pa.C.S.A. § 3701.

[3] 18 Pa.C.S.A. § 903(a).

[4] The Commonwealth consented to this grant of relief.

[5] The PCRA court dismissed Appellant's remaining guilt phase claims without an evidentiary hearing.

I agree with my learned colleagues that we must *sua sponte* address whether this Court or our Supreme Court has jurisdiction over this appeal dealing with the denial of Appellant's guilt phase claims. ***See Barak v. Karolizki***, 196 A.3d 208, 215 (Pa. Super. 2018) (citations omitted). This Court has "exclusive appellate jurisdiction of all appeals from final orders of the courts of common pleas . . . except such classes of appeals as are by any provision of this chapter within the exclusive jurisdiction of the Supreme Court or the Commonwealth Court." 42 Pa.C.S.A. § 742. Our "Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas . . . as provided by 42 Pa.C.S.[A.] §§ 9546(d) (relating to relief and order) and 9711(h) (relating to review of death sentence)." 42 Pa.C.S.A. § 722(4). Section 9546(d) provides that "A final court order under [the PCRA] in a case in which the death penalty has been imposed shall be directly appealable only to the Supreme Court pursuant to its rules." 42 Pa.C.S.A. § 9546(d).

My jurisdictional analysis in this matter turns on whether a PCRA order granting penalty phase relief in a capital case, but denying guilt phase relief, qualifies as a final order in a PCRA case in which the death penalty has been imposed for purposes of section 9546(d). If such an order falls within the scope of section 9546(d), it must be appealed directly to our Supreme Court. ***See id***.; ***see also*** 42 Pa.C.S.A. § 722(4). If it falls outside the scope of section 9546(d), it must be appealed to this Court.

I begin with an analysis of section 9546(d), the relevant jurisdictional provision. When interpreting a statute, we are guided by the Statutory Construction Act, 1 Pa.C.S.A. § 1501 *et seq*. **See Rancosky v. Washington Nat'l Ins. Co.**, 170 A.3d 364, 371 (Pa. 2017). "[O]ur paramount interpretative task is to give effect to the intent of our General Assembly in enacting" section 9546(d). **Commonwealth v. Grove**, 170 A.3d 1127, 1141 (Pa. Super. 2017), *appeal denied*, 185 A.3d 967 (Pa. 2018) (citation omitted). "Generally, a statute's plain language provides the best indication of legislative intent. Therefore, when ascertaining the meaning of a statute, if the language is clear, we give the words their plain and ordinary meaning." **Commonwealth v. Wise**, 171 A.3d 784, 788 (Pa. Super. 2017), *appeal denied*, 186 A.3d 939 (Pa. 2018) (cleaned up). "In reading the plain language, words and phrases shall be construed according to rules of grammar and according to their common and approved usage[.]" **Gross v. Nova Chemicals Servs., Inc.**, 161 A.3d 257, 264 (Pa. Super. 2017) (cleaned up).

The plain language of section 9546(d) provides that a "final court order" that was issued "in a case in which the death penalty has been imposed" falls within our Supreme Court's exclusive jurisdiction. 42 Pa.C.S.A. § 9546(d). Thus, two inquiries emerge. First, we must consider whether the PCRA court issued a final order. Second, if a final order were issued, we must decide if this is a case in which the death penalty "has been imposed," as contemplated by section 9546(d).

"An order granting, denying, dismissing, or otherwise finally disposing of a petition for post-conviction collateral relief shall constitute a final order for purposes of appeal." Pa.R.Crim.P. 910; **see also** Pa.R.A.P. 341(b)(1). In this case, the May 13, 2014 order granted relief on Appellant's penalty phase claims (vacating his death sentence and imposing life imprisonment without the possibility of parole). A prior order dismissed certain guilt phase claims and scheduled a hearing on Appellant's remaining guilt phase claims. As the May 13, 2014 order did not finally dispose of all claims in Appellant's petition, the order was interlocutory. The January 12, 2017 order, however, resolved Appellant's remaining guilt phase claims. Hence, the order of January 12, 2017 from which this appeal was taken is a final order for purposes of section 9546(d).

Whether this is a case in which the death penalty "has been imposed" is a more challenging inquiry. To recount, Appellant was convicted of first-degree murder and sentenced to death. Thereafter, the PCRA court granted relief on Appellant's penalty phase claims and denied relief on his guilt phase claims. As such, while a death sentence was originally imposed in this case, a subsequent PCRA order (now the subject of this timely appeal) vacated the death sentence. Accordingly, we must decide whether section 9546(d) mandates an exclusive appeal to our Supreme Court only in cases where a death sentence currently remains in place.

The plain language of section 9546(d) indicates that a current death sentence need not be in place for our Supreme Court to possess exclusive jurisdiction over an appeal from a PCRA order. Section 9546(d) is phrased in the past tense requiring that a death sentence "has been imposed." It pairs the requirement of a final, appealable PCRA order with the requirement that a death sentence has been imposed. By its plain language, and contrary to the Majority's unsupported assertions, section 9546(d) does not require that the death sentence currently be in place for our Supreme Court to possess exclusive jurisdiction over an appeal from a PCRA order. Hence, section 9546(d) requires only a final PCRA order resolving challenges to a conviction where a death sentence has been imposed. Our Supreme Court has confirmed this is the correct interpretation of the statute. ***Commonwealth v. Bryant***, 780 A.2d 646, 648 (Pa. 2001) ("the legislature did not require that the sentence of death actually be pending in order for [the Supreme] Court to have jurisdiction").

I find ***Bryant*** particularly instructive to the jurisdictional question presented in this case. In ***Bryant***, the PCRA court granted the petitioner penalty phase relief but denied him guilt phase relief. He filed a notice of appeal to this Court from the denial of guilt phase relief. This Court refused to transfer the case to our Supreme Court and instead quashed the appeal. The petitioner then sought allocatur from our Supreme Court and our Supreme Court granted the petition for allowance of appeal. Our Supreme Court held

that this Court erred by not transferring the appeal. *See id.* Our Supreme Court exercised exclusive jurisdiction over the appeal from the denial of guilt phase relief under section 9546(d). Under *Bryant,* it is sufficient for purposes of section 9546(d) that the order challenged on appeal finally disposed of a petition contesting a conviction in a case in which the death penalty was imposed.[6]

I make no finding that the death penalty need not be in place for our Supreme Court to have exclusive jurisdiction over an appeal under section 9546(d). Instead, I rely on our Supreme Court's recent practice of exercising exclusive jurisdiction in similar circumstances and its express holding in *Bryant* that a death sentence need not be in place for our Supreme Court to have exclusive jurisdiction under section 9546(d). *Bryant*, 780 A.2d at 648. It is not this Court's job to determine why our Supreme Court interpreted section 9546(d) in this manner. Instead, it is our duty to faithfully follow our Supreme Court's binding decision in *Bryant*. We must presume that our Supreme Court had sound reasons for interpreting section 9546(d) in this manner. *Bryant* indicates that this rule is in place to permit our Supreme

---

[6] In other cases decided by our Supreme Court, it exercised exclusive jurisdiction under similar circumstances. *See Commonwealth v. Crispell*, 193 A.3d 919 (Pa. 2018) (The petitioner was sentenced to death, the PCRA court granted him penalty phase relief, and the PCRA court denied guilt phase relief. The appeal from that order was taken to our Supreme Court.); *Commonwealth v. Walker*, 36 A.3d 1 (Pa. 2011) (same).

Court to set procedural standards in capital cases on collateral review, even if penalty phase relief were awarded by the PCRA court. This is shown by our Supreme Court's language in **Bryant** counseling PCRA courts not to do what the PCRA court did in this case. Our Supreme Court explained why resentencing a capital petitioner prior to final resolution of all claims in a PCRA petition is problematic. **See Bryant**, 780 A.2d at 648. As an intermediate appellate court, we cannot issue such procedural standards.

Finally, I find **Commonwealth v. Rompilla**, 983 A.2d 1207 (Pa. 2009), inapplicable to our analysis. The binding holding in **Bryant**, interpreting section 9546(d), cannot be overcome by a prior ruling interpreting section 9711(h). Section 9711(h) has different objectives than section 9546(d) and this differentiation is evident in the plain language of the two statutes. Thus, I believe the Majority's reliance on **Rompilla** is misplaced.

In sum, section 9546(d) requires only that an appeal be taken from a final PCRA order in a case in which the death penalty has been imposed. In this case, a valid death sentence was in place at the time Appellant filed his PCRA petition. The January 12, 2017 order disposed of all of Appellant's claims and was a final, appealable PCRA order. Under the plain language of section 9546(d), and our Supreme Court's decision in **Bryant**, a death sentence need not currently be in place for our Supreme Court to have exclusive jurisdiction over such appeals. In other words, when a PCRA court issues a final order for purposes of the rules of appellate procedure, disposing

of claims in a case where the death penalty was still in place at the time the petition was filed, any appeal from that order must be taken to our Supreme Court. Hence, notwithstanding the delay between the interlocutory order granting Appellant penalty phase relief and the final order denying him guilt phase relief, I believed that our Supreme Court has exclusive jurisdiction over this appeal from the denial of guilt phase relief.[7] Accordingly, this Court lacks jurisdiction to consider this appeal and I would transfer this case to the Supreme Court of Pennsylvania. **See** 42 Pa.C.S.A. § 5103(a).

_____

[7] This was not a case in which a court vacated the death sentence, no appeal could be taken from that order, and a new penalty phase was necessary. Under such circumstances, an appeal would properly be taken to this Court. **E.g. Commonwealth v. Kindler**, 147 A.3d 890 (Pa. 2016). Similarly, this was not a case in which Appellant's conviction was vacated and a new trial was necessary. Again, in such circumstances an appeal would properly be taken to this Court. **See id.** at 895, *citing* **Commonwealth v. Gibbs**, 588 A.2d 13, 15-16 (Pa. Super. 1991).